# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.L.S., individually and as Successor in Interest to David Primo-Perez, deceased, by and through her Guardian Ad Litem, Sena Swinney; G.V.S., individually and as Successor in Interest to David Primo-Perez, deceased, by and through his Guardian Ad Litem, Sena Swinney; and DEBORAH CURIEL, individually,<br><br>      Plaintiffs,<br><br>   v.<br><br>COUNTY OF SAN BERNARDINO, a municipal entity; ADAM DUNCAN; MICHAEL CORRAL; and DOES 1 through 10, inclusive,<br><br>      Defendants. | Case No. 5:22-cv-00071-JWH-SP<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION [ECF No. 39]** |

Before the Court is the motion of Defendants County of San Bernardino, Deputy Adam Duncan, and Detective Michael Corral for summary judgment, or, in the alternative, for summary adjudication.[1]  After considering the papers filed in support and in opposition,[2] as well as the argument of counsel at the hearing on July 25, 2023, the Court orders that the Motion is **GRANTED**, for the reasons set forth herein.

## I. BACKGROUND

This case involves claims asserted against Defendants by the alleged successors in interest of decedent David Primo-Perez, who was killed by police officers.  Perez was a fugitive wanted for crimes involving deadly weapons.[3]

On December 27, 2020, a confidential informant reported to the authorities that Perez would be at a Stater Brothers Market parking lot in Barstow, California, and that Perez intended to purchase a firearm from individuals in an unmarked Barstow Police Department van.[4]  Defendants Duncan and Corral were inside the van.[5]  After Perez's car arrived, police officers strategically surrounded it with law enforcement vehicles.[6]  Perez refused to comply with the officers' commands for him to surrender, and Perez armed himself with a machete.[7]

The officers at the scene first utilized less-lethal measures in their efforts to apprehend Perez, including tear gas,[8] but their efforts were unsuccessful.  In an attempt to flee, Perez spun the tires of his car, but he could not escape from the surrounding law enforcement vehicles.[9]  Perez then exited his vehicle on foot and entered the unmarked

---

[1]   Defs.' Mot. for Summ. J. or, in the Alternative, Summ. Adjudication (the "Motion") [ECF No. 39].

[2]   The Court considered the documents of record in this action, including the following papers:  (1) First Am. Compl. (the "Amended Complaint") [ECF No. 31]; (2) the Motion (including its attachments); (3) Pls.' Opp'n to the Motion (the "Opposition") [ECF No. 44]; and (4) Defs.' Reply in Supp. of the Motion (the "Reply") [ECF No. 47].

[3]   Joint Statement of Undisputed Facts and Genuine Disputes (the "Joint Statement") [ECF No. 41] ¶ 5.

[4]   Id. at ¶¶ 27-30.

[5]   Id. at ¶ 32.

[6]   Id. at ¶¶ 35-37.

[7]   Id. at ¶ 51 & 56.

[8]   Id. at ¶¶ 67- & 68.

[9]   Id. at ¶¶ 64 & 70.

Barstow Police Department van.[10] Duncan and Corral both eventually shot at Perez, although the parties dispute whether Perez was reaching for a rifle when the deputies fired.[11] Perez was declared dead at the scene.[12]

More than a year later, in January 2022, Perez's alleged minor children—Plaintiffs A.L.S. and G.V.S.—and Perez's mother—Plaintiff Deborah Curiel—commenced this action.[13] A month later, A.L.S., G.V.S., and Curiel amended their complaint, asserting the following five claims for relief:

- a claim against Duncan and Corral under 42 U.S.C. § 1983 for violating the civil rights of A.L.S. and G.V.S., as successors in interest to Perez, based upon the unreasonable use of deadly force;
- a § 1983 claim against Duncan and Corral for violating the substantive due process rights of A.L.S., G.V.S., and Curiel;
- a Bane Act claim arising under Cal. Civ. Code § 52.1 against Duncan and Corral for violating the rights of A.L.S. and G.V.S.;
- a wrongful death claim against all Defendants for violating the rights of A.L.S. and G.V.S; and
- a negligence claim against all Defendants for violating the rights of A.L.S., G.V.S., and Curiel.[14]

Two days later, the parties stipulated to the dismissal with prejudice of all of A.L.S. and G.V.S.'s claims.[15]

Defendants moved for summary judgment in June 2023.[16] Curiel filed a tardy opposition,[17] as well as a notice of non-opposition to Defendants' Motion with respect to

---

[10] *Id.* at ¶ 71 (disputing whether Perez reached for Duncan's rifle but not disputing that Perez entered the unmarked police van).

[11] *Id.* at ¶¶ 74-75.

[12] *Id.* at ¶ 79.

[13] *See generally* Complaint [ECF No. 2].

[14] *See generally* Amended Complaint.

[15] Stipulation and Joint Request for Dismissal of Claims of Pls. A.L.S. and G.V.S. Only [ECF Nos. 32 & 33].

[16] *See generally* Motion.

[17] *See* Opposition.

the first, third, fourth, and fifth claims for relief.[18]  Defendants replied.[19]  Only Curiel's second claim for relief—a § 1983 claim against Duncan and Corral—remains for resolution.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party.  *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  The substantive law determines which facts are material.  *See id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

## III. DISCUSSION

In her second claim for relief, Curiel alleges that Duncan and Corral deprived her of her Fourteenth Amendment substantive due process right of familial association and companionship with her son, Perez.  This claim, which invokes a long-recognized constitutional right in this circuit, may be asserted by the parents or children of a decedent.  *See Curnow* ex rel. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *Porter v. Osborn*, 546 F.3d 1131, 1132 (9th Cir. 2008).  "While this Fourteenth Amendment claim is often brought in conjunction with a claim of excessive force under the Fourth Amendment, the two are distinct and the former demands a higher standard of culpability from the Defendant Officers."  *Ochoa v. City of Mesa*, 2020 WL 2097785, at *5 (D. Ariz. May 1, 2020), *aff'd*, 26 F.4th 1050 (9th Cir. 2022).

---

[18]   Pls.' Notice of Non-Opposition and Opposition to Certain Portions of Defs.' Motion (the "Notice of Non-Opposition") [ECF No. 45].

[19]   *See* Reply.

**A.     Standing**

The Court first considers whether Curiel has standing to pursue this § 1983 claim, which she asserts pursuant to the Fourteenth Amendment.  The Ninth Circuit "has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1075 (9th Cir. 2013); *see also Curnow*, 952 F.2d at 325 (citing *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986); *Kelson v. City of Springfield*, 767 F.2d 651, 653–55 (9th Cir. 1985)); *Byrd v. Guess*, 137 F.3d 1126, 1133 (9th Cir. 1998) (recognizing "the Fourteenth Amendment liberty interests of a mother and wife in the society and companionship of the deceased").

In their Motion and Reply, Defendants argue that "[n]early all circuits have ruled against permitting recovery for unintentional interference with an adult plaintiff's right to intimate associations with an adult family member."[20]  However, curiously, Defendants cite only out-of-circuit case law for that broad-strokes proposition.  *See, e.g.*, *Robertson v. Hecksel*, 420 F.3d 1254, 1258-1260 (11th Cir. 2005); *Russ v. Watts*, 414 F.3d 783, 787 (7th Cir. 2005); *McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003); *Butera v. District of Columbia*, 235 F.3d 637, 656 (D.D.C. 2001).[21]  Defendants also fail to distinguish, or even to address, the long line of Ninth Circuit authority that Curiel cites in her Opposition— controlling law establishing that parents do enjoy such rights.[22] *See, e.g.*, *Curnow*, 952 F.2d at 325.

This Court is bound to apply the prevailing law of the Ninth Circuit.  Therefore, Curiel has standing to assert a § 1983 substantive due process claim for the loss of society and companionship of her adult nondependent son.

---

[20]     Motion 19:23-25.

[21]     Motion 19:23-20:4; Reply 5:27-6:7.

[22]     Opposition 2:23-3:27; *see generally* Motion; Reply.

## B.     Substantive Due Process Claim[23]

The Court next considers whether Curiel raises a genuine issue of material fact with regard to her substantive due process claim brought pursuant to the Fourteenth Amendment. Curiel's argument is twofold:

- Curiel essentially argues that *Corral's* inability to observe Perez's body when Corral fired his second volley of shots suggests that Corral was unable to determine whether Perez posed a threat that would justify the use of force;[24] and
- Curiel argues that Corral's testimony—that Duncan started firing after Corral's last volley of eight rounds and after Corral perceived Perez to be a threat—creates a genuine dispute of fact concerning *Duncan's* use of lethal force.[25]

The Fourteenth Amendment states in relevant part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[A] parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child and . . . a 'child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest.'" *Curnow*, 952 F.2d at 325 (citations omitted) (quoting *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987)).

A claimant asserting that police officers violated this Fourteenth Amendment right during a police shooting must show that the officers' conduct "shocks the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). There are two tests used to decide whether officers' conduct "shocks the conscience"; which test applies turns on whether the officers had time to deliberate their conduct.

The deliberate-indifference test applies if the situation at issue "evolve[d] in a time frame that permits the officer to deliberate before acting." *Porter*, 546 F.3d at 1137. Deliberation is not possible if the officers "encounter[ed] fast paced circumstances presenting competing public safety obligations." *Id.* at 1139. Deliberation in this context "should not be interpreted in the narrow, technical sense." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

On the other hand—and as here—the purpose-to-harm test applies if the situation at issue "escalate[d] so quickly that the officer [had to] make a snap judgment." *Porter*,

---

[23]     Because the Court ultimately concludes that there is no Fourteenth Amendment violation and grants summary judgment on that basis, it does not address the second prong of the qualified-immunity test. *See Saucier v. Katz*, 533 U.S. 194 (2001).

[24]     *See* Opposition 11:24-12:20.

[25]     *See id.* at 12:13-13:20.

546 F.3d at 1137. This test requires "a more demanding showing that [the officers] acted with a purpose to harm [the decedent] for reasons unrelated to legitimate law enforcement objectives." *Id.* Legitimate objectives can include "arrest, self-protection, and protection of the public." *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018). Illegitimate objectives include "when the officer 'had any ulterior motives for using force against' the suspect, such as 'to bully a suspect or "get even,"' or when an officer uses force against a clearly harmless or subdued suspect." *Id.* (citations omitted) (quoting *Gonzalez v. City of Anaheim*, 747 F.3d 789, 798 (9th Cir. 2014); *Wilkinson*, 610 F.3d at 554).[26]

Curiel has adduced no evidence showing that the officers acted with "anything less than legitimate law enforcement objective" in carrying out their actions. *Ochoa*, 2020 WL 2097785, at *6. As described above, Perez was reported to have used deadly weapons during his commission of crimes in the past, including an axe, a knife, and a firearm.[27] Perez was also "previously wanted for attempting to run over a deputy sheriff during a domestic violence situation."[28] On the day of the incident, Perez was not complying with the officers' commands, and he ignored repeated demands for him to raise his hands.[29] At the beginning of the encounter, the officers tried to use less-lethal weapons to apprehend Perez, but Perez would not comply.[30]

During the encounter, it is also undisputed that Perez's "vehicle [had] made contact with the police vehicles"[31] and that Perez was armed with a machete.[32] In his attempt to escape, Perez eventually entered an unmarked police vehicle. It is undisputed that Duncan's rifle was in that vehicle, "positioned between the front driver's seat and center console."[33] Immediately before the shooting, it is undisputed that the law

---

[26] As the Ninth Circuit held in *Ochoa*, 26 F.4th at 1056, "the Fourteenth Amendment standard applicable to a claim by a relative demands more of such a plaintiff than a Fourth Amendment claim by the victim of an officer's actions."

[27] Motion 23:21-23; Joint Statement ¶¶ 2, 8, 10, & 12.

[28] Motion 23:24; Joint Statement ¶ 18.

[29] Motion 24:1-2; Joint Statement ¶¶ 52, 62, & 64.

[30] Motion 24:2-4; Joint Statement ¶¶ 53, 61, 63, & 68.

[31] Motion 24:4-5; Joint Statement ¶ 50.

[32] Motion 24: 5; Joint Statement ¶ 57.

[33] Motion 24:6-7; Joint Statement ¶ 71 (the parties dispute whether Perez actually reached for Duncan's rifle, but they do not dispute that Duncan's rifle "was positioned between the front driver's seat and center console"); *see also id.* at ¶ 91 ("Prior to Mr. Perez's entry into the Caravan, Deputy Duncan had placed his rifle in between the front driver's seat and the center console area with the barrel pointed downward with the buttstock sticking out."); *id.* at ¶ 92 ("Deputy Duncan's rifle was a fully automatic Colt M4 'carbine' style rifle equipped with a magazine with a capacity of 30 rounds.").

enforcement vehicle was at Perez's disposal and the rifle and the machete were within Perez's vicinity.[34]

The standard and the analysis governing Curiel's Fourteenth Amendment deprivation-of-substantive-due-process claim are different from those for an excessive force claim under the Fourth Amendment. Indeed, "it may be possible for an officer's conduct to be objectively unreasonable yet still not infringe the more demanding standard that governs due process claims." *Moreland*, 159 F.3d at 371 n.4. In this instance, the question is not whether the amount of force that Duncan and Corral exerted was excessive, but whether they acted with legitimate law enforcement objectives. Duncan and Corral meet that lower threshold. *See Wilkinson*, 610 F.3d at 554-55 ("Because [the officer] was in a rapidly evolving situation requiring him to make 'split-second judgments,' we need not scrutinize as closely . . . [his] decision about how best to minimize the risk to his own safety and the safety of others.").

In addition, if it is indeed true that Corral was unable to see Perez's body at the moment that Corral fired his second volley of eight rounds or that Corral was unable to determine whether Perez was reaching for a rifle,[35] those facts are immaterial given that Perez was inside a law enforcement van at the time that Corral fired those eight rounds and that there was a rifle and a machete inside that law enforcement vehicle. The facts here are also distinguishable from the cases that Curiel cites. For instance, in *Hopkins v. Andaya*, 958 F.2d 881, 887 (9th Cir.), *as amended* (Mar. 5, 1992), the Ninth Circuit concluded that "it was far from clear that [the defendant] reasonably feared for his life" based upon several crucial undisputed facts, including that the plaintiff was both unarmed and wounded. *Hopkins*, 958 F.2d at 887. In addition, in *Henderson v. City of Torrance*, 2020 WL 8024351, at *1 (C.D. Cal. Dec. 14, 2020), a court in this District found that using force to apprehend the plaintiff was unconstitutional precisely because the decedent was unarmed and not a threat. *Id.* at *7. Finally, in *Zion v. Cnty. of Orange*, 874 F.3d 1072 (9th Cir. 2017), the Ninth Circuit explained that a reasonable jury could find that the head stomps that the officers applied to the plaintiff did not serve a legitimate law enforcement precisely because the plaintiff had been "rendered . . . incapable of causing harm or fleeing." *Id.* at 1077. Here, in contrast, it is undisputed that a rifle and a machete were in Perez's vicinity and—given Perez's access to a law enforcement vehicle—that Perez was likely not incapable of causing harm or fleeing.

---

[34] Motion 24:8-9; Joint Statement ¶ 72 (stating that it is undisputed that "Deputy Duncan and Detective Corral knew that Mr. Perez was already armed with a machete, but then also had the rifle and van available to him").

[35] *See* Opposition 7:16-8:9.

Finally, the fact that *Corral* may have perceived Perez no longer to be a threat when *Duncan* started firing is of no moment. Corral was located in a different location than Duncan. While Corral had been on the hood of the vehicle, Duncan was at the passenger side of the van's front door when he fired shots.[36] The fact that Corral believed that there was no longer a threat does not mean that Duncan's perception was wrong based upon his location and viewpoint.

In view of the foregoing, Duncan and Corral are entitled to summary judgment on Curiel's Fourteenth Amendment claim. Thus, the Court **GRANTS** the Motion and **DISMISSES** Curiel's substantive due process claim under the Fourteenth Amendment.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

    1.    Defendants' Motion for summary judgment is **GRANTED**. All remaining claims against Defendants are **DISMISSED.**

    2.    Judgment shall issue accordingly.

**IT IS SO ORDERED.**

Dated: August 21, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[36] *Reply* 11:2-4; Decl. of Detective Michael Corral [ECF No. 40-1] ¶ 39, Ex. A; Decl. of Deputy Adam Duncan [ECF No. 40-1] ¶ 37.